[No. 38477.    Department One.    December 29, 1966.]

MARY EVANS, *Respondent*, v. MARTHA LAURIN, *Individually and as Executrix, Appellant.*\*

*Roy E. Jackson* and *Thor P. Ulvestad,* for appellant.

*Corbett, Siderius & Lonergan* and *C. R. Lonergan, Jr.,* for respondent.

POYHONEN, J.†—On December 29, 1959, the respondent, Mary Evans, a divorced single woman, as first party, and one Toivo Jakko Luoma, a single man, as second party, entered into a written agreement reading in part as follows:

\*Reported in 422 P.2d 319.

†Judge Poyhonen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

That the party of the first part hereby agrees to care for, support, and maintain during his life the party of the second part, providing him with wholesome and necessary food, and also to provide him with a suitable bed and bedding, and, should his resources not be sufficient, the party of the first part shall provide him with suitable and necessary clothing; the intention of this agreement being to provide the party of the second part a home during the remainder of his lifetime.

The party of the second part hereby agrees, in consideration of the provisions above enumerated, that, at the time of his death, the following described real property, located at 217 West 40th, Seattle, Washington, and legally described as:

Lots 10 & 11, Block 4, Canal Addition to the City of Seattle, . . . the dwelling house located thereon, and its contents, shall become vested in and belong to MARY EVANS, party of the first part, free and exempt from any claim from any of the heirs of the party of the second part. This agreement shall be binding on the heirs, executors, and administrators of the parties to this agreement.

After Luoma's death on June 9, 1964, respondent filed a claim against his estate, asserting that she was entitled to the real property above described and the contents of the dwelling. The claim was rejected. Respondent brought timely suit. From a judgment in respondent's favor, the executrix appeals.

The trial court noted that there are in this case two features somewhat out of the ordinary. First, the contract was in writing, definite, certain, and prepared by Luoma's attorney. Second, the contract was entered into by a man who was by no means elderly. Luoma was then 55 years of age, steadily employed as a welder, and planned to work until he was eligible to retire on social security. He did not then need, or seem to expect, continual care or substantial financial support, although he seems to have been mindful that the time might come when he would.

Appellant has made seven assignments of error, which essentially raise three issues: 1. The court erred in finding that respondent performed her agreement and was entitled

to a decree quieting title. 2. The court erred in admitting into evidence the written agreement above-mentioned, since it failed to conform to the legal requirements of either a deed or a will. 3. The court erred in denying appellant's motion for a new trial based upon newly discovered evidence.

Each case of the kind now before us must rest upon its own peculiar facts and circumstances. *Jennings v. D'Hooghe,* 25 Wn.2d 702, 172 P.2d 189 (1946).

Did respondent perform her agreement? It appears necessary to describe the background, relationship, and conduct of the parties.

The trial court was entitled to find from the evidence:

That respondent and Luoma were born in rural Finland, were reared in the same neighborhood, and had known each other since childhood;

That respondent came to this country in 1921, lived for a time with relatives in Minnesota, and has lived most of the time since 1930 on a farm that she owns at Port Ludlow, where she keeps a few cows;

That Luoma was born in 1904 and was 59 years of age at his death. That he immigrated to Canada in 1929, worked in the woods in British Columbia, and came to Seattle in 1941. From 1941 until his death he worked as a welder in a Seattle shipyard;

That respondent and Luoma renewed their acquaintanceship after respondent's return from a trip to Finland in November 1953, and that from that time until 1957 Luoma was a week end visitor at respondent's farm at Port Ludlow about twice a month, and that during this same period of time respondent visited Luoma in Seattle from three to four times a month. That on the latter occasions she would bring groceries to the Luoma home, do the cooking, laundry, and house cleaning;

That in 1957 respondent sold her cattle, moved to Seattle, and until 1961 lived at the Galland Rest Home where she was employed as a cook 5 days per week. On her 2 days off per week, she stayed at the Luoma home, supplied some

groceries, and did the cooking, laundry, and house cleaning. During this period of time respondent made occasional trips to her farm, and on occasions Luoma visited her there;

That in 1961, respondent left her employment in Seattle, returned to her farm, purchased a few cattle, and thereafter continued to receive Luoma at her home for week ends about twice a month, and went to Luoma's Seattle home whenever requested, on which occasions she performed the usual household chores much the same as before;

That respondent and Luoma had discussed marriage;

That Luoma had frequently expressed to his close friends the expectation that when he retired he would go to live at respondent's farm; that there is no evidence that respondent would not have welcomed him to her farm and have taken care of him had he lived to retirement age;

That Luoma on occasions showed the agreement to friends, that on one occasion he told respondent's son, "Don't worry about the things your mother is doing for me, because I have her taken care of." That on the evening before he died, Luoma called an 83-year-old friend, Emma Aho, and said, "Emma, remember if anything happen I got the papers between me and Mary." That Emma Aho then suggested that he call the respondent if he was ill, because she would be sure to come; that Luoma stated he was going to try to work the following day, but that if he didn't feel better he would call the respondent;

That respondent was always good to Luoma; that he never complained about the care and attention she gave him; that she never failed to go to his Seattle home when requested; that she never failed to receive him into her home at Port Ludlow when he desired to go there.

The trial court concluded that, while the relationship and conduct of the parties was much the same after the execution of the support agreement in 1959 as it had been for years prior to that time, the respondent had performed her agreement to Luoma's satisfaction, and that he had accepted her performance without objection. This factual find-

ing is supported by substantial evidence and will not be disturbed.

When one party performs under contract, and the other party accepts his performance without objection, it is assumed that such performance was the performance contemplated by the contract. 17A C.J.S. *Contracts* § 590, p. 1144.

Where Luoma was satisfied with respondent's performance during his lifetime, his personal representatives should not be heard to say, after his death, that he ought not to have been satisfied.

We are moved to observe that, while the support agreement recites that it is in consideration of support and services to be furnished by the respondent in the future, it is obvious that Luoma was not unmindful of the services that respondent had performed gratuitously for him over a period of years prior to its execution.

The trial court noted that Luoma's early death resulted in a better bargain for respondent than would have been the case had he lived to a ripe old age. The death, however, was not of respondent's making.

One other factual situation requires comment. For a few months immediately prior to his death, Luoma had in his home one Joseph Merculieff, who helped with cooking, laundry, and other housework. It is argued that this fact establishes an abandonment by the respondent of the agreement. The evidence shows that Luoma took Merculieff into his home on the suggestion of his close personal friend, Isaac Lamppa, who suggested that the man was a very good house painter and that for $5 per week plus board and room Luoma could have his housework done and his home painted. We cannot find that respondent's agreement with Luoma contemplated that she do house painting. On one occasion during this period of time. Luoma asked Merculieff to leave and requested the respondent to come to Seattle. She came promptly, stayed about 2 weeks, and performed the same duties about the Luoma home that she had ordinarily performed in the past. The trial court found

no abandonment by respondent of the agreement. We agree.

The appellant argues that the written agreement between the respondent and Luoma should not have been admitted in evidence since it was neither a deed nor a will; that it must fail because it did not specify how title was to pass. This argument is without merit.

■ This court held in *Velikanje v. Dickman,* 98 Wash. 584, 594, 168 Pac. 465 (1917):

> The evidence was certain as to the parties, the property and the services to be rendered, but was not so certain as to how the title was to pass. This last is not an essential. A promise to leave property in return for support or services need not specify how title is to pass. It is sufficient if an agreement is shown that the promisee shall receive the property, or that it shall be left to him at the decease of the promisor.

The rule is stated in 94 C.J.S. *Wills* § 111, p. 863:

> Although usually put in the form of an agreement to bequeath by will, that is not essential, it being sufficient that there is an agreement to leave the property or that the promisee shall have it at the death of the promisor; the fact that the mode whereby the disposition is to be effected is not specified does not impair the validity of the agreement . . . .

Appellant's motion for new trial was based upon newly discovered evidence, consisting of a number of letters alleged to have been written by Luoma to a sister in Finland.

■ Neither the appellant's affidavit in support of the motion for new trial nor the letters can be considered on appeal. They are not contained in the statement of facts. They are not identified in the judgment or any other order of the trial court. While they are contained in the transcript, the record does not establish that they were ever offered into evidence or that the trial court ever saw them or knew of their existence.

This court said in *Zarelli v. Superior Distrib. Corp.,* 51 Wn.2d 154, 155, 316 P.2d 465 (1957):

> By a long line of cases over a period of more than sixty years, it is settled law that affidavits supporting or

opposing motions appearing only in the transcript cannot be considered upon appeal. The affidavits or other factual showing upon which such motions are determined must be brought up in the statement of facts and cannot be otherwise considered. [Citing cases.] The rule is otherwise if the affidavits or other evidentiary materials are identified in the judgment or order.

Judgment affirmed.

HILL, OTT, HUNTER, and HALE, JJ., concur.